## W. T. BOYD *et al.* v. STATE.

No. A-2727.   Opinion Filed July 21, 1917.

Rehearing Denied January 5, 1918.

(169 Pac. 499.)

INTOXICATING LIQUORS—Unlawful Possession—Sufficiency of Evidence. Evidence examined, and **held** sufficient to sustain a judgment of conviction for unlawful possession of intoxicating liquors with intent to sell the same.

*Appeal from County Court, Garfield County;*
*E. L. Swigert, Judge.*

W. T. Boyd and Guy Smith were convicted of the unlawful possession of intoxicating liquor, and they appeal. Judgment affirmed.

*H. J. Sturgis* and *James W. Steen,* for plaintiffs in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J.   There is but one ground upon which this court is asked to reverse this judgment, viz., the insufficiency of the evidence to sustain a conviction.

The evidence discloses that in the month of July, 1915, these plaintiffs in error leased from a man by the name

of Prouty a one-story building in North Enid, Okla., Garfield county, located close to what is known as the Chisholm Trail. They took out a lease on these premises for a period of four months. There was no other residence or business house located within a block of the building they leased. Connected with the main building was a sort of a shack or outbuilding which was at that time surrounded by tall grass and weeds. Plaintiffs took possession of this building under the lease along about the 22d day of July, 1915, and were in possession thereof up until the 12th day of August, 1915, at which time the undersheriff and a deputy sheriff of that county made a raid on the premises, and in one of the rooms of the building connected with a storeroom in which a small amount of groceries and tobacco was kept they discovered four or five persons sitting and drinking something out of tin cups. This was at 10:30 or 11 o'clock at night. They proceeded from the house when the parties who were in there drinking dispersed, got into automobiles and drove off in the direction of the city of Enid. The officers examined the tin cups and found that they contained beer. They made a search of the premises, and in the shack adjoining the main building they found nine quart bottles of Pabst beer in a candy bucket filled with ice and water. Further searching they also found in the weeds close to the shack four and one-half pints of whisky. Neither of the defendants was seen on the premises at that time by the officers, but one of the witnesses for the state, who was a short distance away at the time the raid was made, saw somebody run away from the building dressed in his shirt sleeves, and without any hat. The identity of this fugitive was not disclosed. Several witnesses testified that these

defendants had been in and around those premises for two or three weeks prior to the time this raid was made; that for at least two weeks prior to the time this raid was made the premises had the reputation of being a place where intoxicating liquors were kept for illegal sale; that persons in automobiles were frequently seen to drive up to this place, and stop and get out and go into the building, and remain for various periods of time. The defendant Boyd admits that he leased the property from Prouty on or about the 22d day of July, 1915, and that he had possession of it and control of the premises up until about 11 o'clock on the morning of the day that this raid was made at night. He denies that his codefendant, Smith, had any connection with the premises except as his employee merely. Prouty testifies that he leased the premises to the defendants jointly, and another witness testifies that he was at the place of business a day or two before the raid was made for the purpose of installing a telephone, and that Smith was present and told the witness that he would have to consult his partner about putting the telephone in. This was a very short time before the finding of the liquor. In support of their contention that they had abandoned these premises and turned them over to another person, the defendants produced a purported bill of sale to one Guy Phillips, dated the 12th day of August, 1915. The evidence discloses that Phillips, if he ever took possession of the premises at all under this alleged sale, only remained there a day or two, when the defendants were compelled to and did reenter the building under their lease from Prouty. At the time of the trial, however, it appeared that Phillips was dead. Smith also testified that neither he nor his codefendant was upon those premises later than 11 o'clock

of the morning of the 12th of August. However, one wit-
ness for the state in rebuttal testified that he saw Smith
standing in the door of the building late in the evening
of the day the raid was made. Nobody appears upon the
witness stand who ever saw Phillips in possession of these
premises.

This is not the first time that a bill of sale has been
presented for consideration by juries of this state in con-
nection with the defense of this class of crime. It has long
been a favored defense, not only of those charged with
the larceny of live stock, but also of those charged with
maintaining liquor nuisances, or with the unlawful pos-
session of intoxicating liquor. The good faith of this
defense under the facts and circumstances of this case
was a question for the jury. The entire defense of both
of these defendants was based thereon. All the facts and
circumstances and inferences logically to be drawn there-
from, on the part of the state's evidence, showed that
these plaintiffs in error at the time of this raid were in
possession and control of the premises where this liquor
was found, and had been in continuous control thereof
for some three weeks prior thereto. The jury had a right
so to infer, and its verdict in this case will not be dis-
turbed by this court where such an inference was rea-
sonably deducible from the evidence.

It appears from the records of this court that these
defendants have been consistent and persistent violators
of the prohibitory liquor laws of this state. They un-
dertook this unlawful business at their own peril, and
must suffer the consequences.

The judgment is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.